UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHELBY V. FRATELLO and RYNE M. SEETO,<br><br>Plaintiff<br><br>v.<br><br>DAN WILDE, et al.,<br><br>Defendants | Case No.: 2:25-cv-01606-APG-EJY<br><br>**Order (1) Denying Motions for Temporary Restraining Order and Preliminary Injunction, (2) Granting in Part Defendants' Motion to Seal, and (3) Setting Deadline to File a Motion to Seal**<br><br>[ECF Nos. 24, 25, 30] |

Shelby Fratello and Ryne Michael Seeto[1] sue Clark County and several Clark County employees for various claims arising out of the removal of their child, A.R.S., from their custody.[2] Among the relief the plaintiffs request in their first amended complaint is A.R.S.'s return to their custody. ECF No. 28 at 44.

Prior to filing the first amended complaint, Seeto moved for a temporary restraining order (TRO) (1) seeking A.R.S's return or placement with the plaintiffs' immediate local family; (2) enjoining the defendants from making "medical, psychological, educational, or custodial decisions regarding [A.R.S.] without written parental consent or court order"; (3) preserving relevant evidence and communications; and (4) holding a preliminary injunction hearing. ECF No. 25 at 15. Seeto anticipated that the defendants would assert that I should abstain under

---

[1] The first amended complaint states that Fratello and Seeto are suing on behalf of their minor child, A.R.S. ECF No. 28 at 5. However, under current Ninth Circuit law, "a parent may not proceed pro se on her children's behalf." *Grizzell v. San Elijo Elementary Sch.*, 110 F.4th 1177, 1181 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2701 (2025).

[2] The plaintiffs also sue Seeto's ex-wife, who allegedly conspired with state actors related to enforcement against Seeto for arrears in child support. ECF No. 28 at 6-77.

*Younger v. Harris*, 401 U.S. 37 (1971), so he attached to his motion a memorandum of law arguing why I should not abstain.

Defendants Dan Wilde and Clark County Department of Family Services (DFS) oppose.[3] Wilde and DFS argue that *Younger* abstention applies. They also contend that the plaintiffs have received due process in the state court proceedings and the records from those proceedings confirm that the child was endangered in the plaintiffs' custody, is safe in state custody, and would be at risk of harm if returned to the plaintiffs. Specifically, they note there was evidence of the parents' drug use and domestic violence, that their home had drug residue and guns accessible to a child, and that there were two other individuals in the plaintiffs' house who were under the influence and uncooperative with police at the time A.R.S. was removed from the home. Finally, they contend that Seeto's motion is not supported by sufficient evidence to grant the extraordinary relief he requests.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve Seeto's motions. I deny Seeto's motions because I abstain from granting the requested injunctive relief under *Younger* and because his request for evidence preservation is unnecessary.

# I. ANALYSIS

"Federal courts have a presumptive, or what is sometimes said to be virtually unflagging, obligation to decide cases within their jurisdiction." *Yelp Inc. v. Paxton*, 137 F.4th 944, 950 (9th Cir. 2025) (simplified). But "*Younger* abstention is an exception to that rule." *Id. Younger* abstention is based on the recognition that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is

---

[3] Wilde and DFS were the only defendants in the original complaint. ECF No. 1-1 at 6. The first amended complaint adds defendants, but none has been served so they have not responded to Seeto's motions.

2

the normal thing to do." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (quotation omitted); *see also Yelp, Inc.*, 137 F.4th at 950 (stating "courts have long had discretion not to exercise equity jurisdiction when alternatives are available" (simplified)).

"Although originating in the criminal context, *Younger* has been extended to prevent federal court injunctions of certain ongoing state civil proceedings." *Yelp Inc.*, 137 F.4th at 950. For a civil case like this one, I may abstain under *Younger* "only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *Id.* (quotation omitted).  To abstain, each element must be satisfied. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).  If the *Younger* abstention requirements are met, I "then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.*

**A. The *Younger* factors are met, and the injunctive relief Seeto requests would have the practical effect of enjoining the state proceedings.**

First, there is no dispute that the child welfare proceedings pre-date this lawsuit and are ongoing.  DFS took A.R.S. into custody on July 23, 2025, this lawsuit was filed about a week later, the family court proceedings have been ongoing, and a hearing is scheduled for January 13, 2026. *See, e.g.*, ECF Nos. 1-1; 32-7 at 4; 32-9; 32-11; 32-13.  Second, child welfare actions are quasi-criminal enforcement actions. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013) (citing *Moore v. Sims*, 442 U.S. 415, 419-20 (1979)).  Child welfare and protecting children from dangerous home environments are important state interests. *See Mueller v. Auker*,

3

700 F.3d 1180, 1186 (9th Cir. 2012) (A state "has an urgent interest in the welfare of the child . . . ." (quotation omitted)).  Seeto does not dispute these factors.

However, Seeto challenges whether the Nevada courts have allowed him and Fratello to raise federal challenges.  He contends that despite trying to raise constitutional challenges in state court, they have been "rebuffed at every turn." ECF No. 25-3 at 7.  He argues that he and Fratello have been denied due process because the state court refused to review video footage at the initial protective custody hearing on July 28, their motions were denied without a hearing, and they were denied discovery and the opportunity to present witnesses on their behalf.  Seeto argues that he has exhausted state court remedies because the Supreme Court of Nevada denied their interlocutory appeal due to a lack of a final order from the family court.

I do not rule on the plaintiffs' due process claim at this time.  But I conclude that Seeto has not sufficiently shown that the Nevada courts are unwilling to entertain constitutional challenges such that *Younger* abstention should not apply.  The state court records show that the plaintiffs were notified of and attended various hearings in state court and were advised of their rights to be represented by an attorney and to present evidence. ECF Nos. 32-7 at 2-3; 32-9; 32-11; 32-13 at 2.  Fratello was represented by counsel. ECF Nos. 32-7 at 5; 32-13 at 2.  Seeto chose to represent himself. ECF No. 32-7 at 5.

Seeto has walked out of or not attended hearings that have been afforded to him. *See* ECF Nos. 32-11 at 2; 32-14 at 1.  For example, according to the family court's order arising out of the July 29 protective custody hearing, Seeto yelled at the court, "made aggressive actions toward the Court's marshals," grabbed Fratello in what the court perceived to be an effort to prevent her from speaking, and Seeto and Fratello "left the courtroom before the conclusion of the hearing, continuing to yell at the Court and exited in an aggressive manner." ECF No. 32-7 at 4.  At the

September 29 hearing, Seeto was able to object to evidence, but Seeto apparently left the hearing after an evidentiary ruling did not go his way. ECF No. 32-11 at 2. Witnesses testified at the September 29 hearing, and had Seeto stayed at the hearing he presumably could have cross-examined the witnesses, presented his own witnesses, and raised federal claims. *Id.* at 3. At that hearing, Fratello indicated she did not want to proceed to trial and wanted to work toward reunification with A.R.S. *Id.* Seeto did not show up to the November 25 hearing where, again, he presumably could have raised federal claims. ECF No. 32-14 at 1.

The plaintiffs thus have been afforded notice and opportunities to be heard. And despite Seeto's characterization that he exhausted state avenues for relief, he has not because he has abandoned or did not attend available opportunities to raise his federal claims. The fact that Seeto has not obtained the rulings he wanted or when he wanted them does not mean the state courts do not allow for constitutional challenges. Further, there are upcoming hearings at which the plaintiffs can raise federal claims, and the plaintiffs can appeal any final order or seek mandamus relief. I do not presume that "the state courts will not safeguard federal constitutional rights." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

Because all four *Younger* requirements have been satisfied, I next consider whether allowing Seeto's injunctive relief requests to proceed would have the practical effect of enjoining the state proceedings. Some requests would. The state court has entered orders granting temporary legal and physical custody to DFS, approving case plans for reunification with the parents, and granting DFS the authority to consent to necessary or emergency care for the child while the child remains in the state's custody. ECF Nos. 32-7 at 4; 32-13 at 3-4; 32-14 at 1. It has set hearings in January and July 2026. ECF No. 32-13 at 4. Seeto's request that I order the child to be returned to the parents, enjoin the defendants from making medical or custodial

decisions regarding the child without the parents' consent, and hold a preliminary injunction hearing would have the practical effect of enjoining the state court proceedings. Accordingly, *Younger* abstention applies to these requests unless an exception exists.

However, Seeto's request that the defendants be ordered to preserve all evidence would not effectively enjoin the state court proceedings. But as I already advised the plaintiffs, the request for evidence preservation is unnecessary because the defendants are already under a duty to preserve evidence. ECF No. 22 at 2 (citing *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (A party has a duty to preserve documents when it has "some notice that the documents were potentially relevant to the litigation." (quotation omitted))). There is no indication that the defendants have destroyed or are likely to destroy evidence. So I deny the request for an injunction to preserve evidence.

**B. No exception to *Younger* abstention applies.**

Seeto argues that even if *Younger* ordinarily would apply in these circumstances, exceptions exist in this case. First, he argues that the defendants should be judicially estopped from asserting *Younger* abstention because they removed this case to federal court. Next, he argues he has exhausted all avenues of relief in state court, including an appeal to the Supreme Court of Nevada, which was dismissed. He also contends that this case falls within *Younger*'s exception for bad faith official conduct or harassment. Finally, he argues that applying *Younger* here would violate the Constitution because the fundamental right of a parent to the care, custody, and control of their child is at stake.[4]

---

[4] Seeto violated Local Rule 7-3(b)'s 24-page limit by attaching a separate 18-page memorandum regarding *Younger* to his 16-page motion. The defendants did not specifically respond to all the arguments Seeto raised in his separate memorandum. Regardless, because *Younger* involves the discretionary exercise of my equity powers and implicates comity and federalism concerns, I address Seeto's arguments in his separate memorandum without requiring a further response

6

There are exceptions to *Younger* abstention when a litigant can "show[] bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 54. These exceptions are "narrow." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975). None applies in this case.

First, I reject Seeto's judicial estoppel argument because the defendants' positions are not so inconsistent as to require judicial estoppel. The defendants removed the case based on federal question jurisdiction. ECF No. 1. Federal questions remain in the plaintiffs' first amended complaint. ECF No. 28; *see also* ECF No. 22 at 2 (advising the plaintiffs that if they filed an amended complaint that asserted only state law claims, I would remand the case to state court). As discussed above, *Younger* abstention applies only to claims that would have the practical effect of enjoining state court proceedings. It is not clear that all of the plaintiffs' claims would fall into this category. For example, it does not appear that allowing the sexual assault claim for damages under 42 U.S.C. § 1983 to proceed in this court would have the practical effect of enjoining the state court proceedings. *See* ECF Nos. 1-1 at 10; 28 at 26-28. Additionally, when a claim for damages is at issue, "an abstention-based stay order, rather than a dismissal, is appropriate." *Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004) (en banc). Accordingly, the defendants' position that the case is properly removed to federal court based on federal question jurisdiction is not "clearly inconsistent" with their position that the requested injunctive relief is not an available remedy because of *Younger*. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quotation omitted).

---

from the defendants. *See Yelp Inc. v. Paxton*, 137 F.4th 944, 950 (9th Cir. 2025) (stating that Younger is based on "the recognition that courts have long had discretion not to exercise equity jurisdiction when alternatives are available" (simplified)); *Gilbertson v. Albright*, 381 F.3d 965, 976 (9th Cir. 2004) (en banc) ("[I]nterference with state proceedings is at the core of the comity concern that animates *Younger*.").

Next, Seeto argues he has exhausted all avenues of relief in state court, including an appeal to the Supreme Court of Nevada, which was dismissed. As discussed above, Seeto has not exhausted all avenues of relief. And Seeto has not pointed to authority that state court exhaustion is a recognized *Younger* exception.

Seeto also contends that this case falls within *Younger*'s exception for bad faith official conduct and harassment. In "the *Younger* abstention context, bad faith generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Yelp Inc.*, 137 F.4th at 951 (quotation omitted). Seeto has not shown bad faith. DFS obtained warrants signed by one judge, an order for protective custody signed by a different judge, and an order after a disposition hearing approving the DFS case plan by another judge. ECF Nos. 32-4; 32-5; 32-7; 32-8; 32-13; 32-14 at 1. That DFS was able to prevail at each stage before different judges strongly suggests that the defendants brought the child welfare proceedings with a reasonable expectation of obtaining protection for the child, which they in fact obtained. *See Yelp Inc.*, 137 F.4th at 952 ("To warrant enjoining state court proceedings because the state lawsuit is lacking in merit, that lack of merit must thus be so palpable and overwhelming as to fairly demonstrate bad faith.").

Seeto also has not sufficiently shown harassment within the *Younger* context. "*Younger* allowed that enjoining state court proceedings could be appropriate if the District Court properly finds that the state proceeding is motivated by a desire to harass." *Id.* at 953 (quotation omitted). And "harassment indicative of bad faith could include filing state court litigation in retaliation for the exercise of constitutionally protected rights." *Id.* "But just as an allegation of bad faith is not a talisman sufficient to overcome an otherwise proper exercise of abstention, the same must be true of an allegation of retaliatory motive based on the exercise of constitutional rights, lest

*Younger*'s bad faith exception overtake *Younger* altogether." *Id.* (simplified).  Rather, "any retaliatory motive or harassment [must] be sufficiently severe or pervasive to legitimize [a federal court's] halt of state court proceedings in which these same constitutional objections could be raised." *Id.* at 954.

Seeto has not shown that the state court judges were biased, that the defendants have pursued a "serial pattern of litigation" against the plaintiffs, or "a past history of personal conflict" or "animus" toward the plaintiffs "that would raise an inference of vindictive retaliation." *Id.* at 955 (simplified).  Although the plaintiffs make a serious allegation of sexual assault, Wilde denies it and asserts that he has a recording of Fratello informing her sister that she was going to make false allegations against Wilde. ECF No. 32-1 at 2.  I need not and do not make a credibility determination on this issue because even if the sex assault allegation is true, Wilde was not the sole decisionmaker regarding the child welfare proceedings.  The state court records show Wilde's supervisor signed off on Wilde's preliminary protective hearing report, and another DFS employee and deputy district attorneys attended the hearings. *See* ECF Nos. 32-6 at 2, 10; 32-7 at 2; 32-13 at 2.  Even if Wilde had an improper motive, there is no evidence the other DFS employees or deputy district attorneys shared that motive.  Accordingly, I do not find harassment sufficient to invoke an exception to *Younger*.

Finally, Seeto argues that applying *Younger* here would violate the Constitution because the fundamental right of a parent to the care, custody, and control of their child is at stake. Parents have the "fundamental right . . . to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000).  But the state also has a "strong" interest in domestic relations matters, and the state court system has "superior competence . . . in settling family disputes." *Cf. Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir.

1983) (discussing the domestic relations exception). The fact that a constitutional right is at issue is not an exception to *Younger*. *See Stockton v. Brown*, 152 F.4th 1124, 1140 (9th Cir. 2025) (stating that "free-speech rights are treated like other constitutional rights in the *Younger* analysis—in the interest of comity, we generally rely on state courts to vindicate those rights in state proceedings"); *Yelp Inc.*, 137 F.4th at 956 ("The cases are clear that a First Amendment defense is not sufficient, standing alone, to justify *Younger*'s bad faith exception.").

The requirements for invoking *Younger* abstention are met, granting Seeto the requested injunctive relief would enjoin the state proceedings, and no exception applies. I therefore abstain from considering the injunctive relief Seeto requests. As a result, I deny his motions for a TRO and preliminary injunction.

**C. I grant in part the defendants' motion to seal because Nevada law protects the confidentiality of child welfare proceedings and the records contain medical information, but the defendants have not shown all exhibits should be sealed.**

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 597 (1978). Thus, there is "a strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quotation omitted). A party seeking to seal a judicial record bears the burden of overcoming this strong presumption by meeting either the good cause or compelling reasons standards depending on the type of filing before the court. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006). Where, as here, a motion for injunctive relief "is more than tangentially related to the merits of a case," the party seeking to seal must show compelling reasons to overcome the presumption of public access. *Ctr. for Auto Safety*, 809 F.3d at 1101. Thus, I may seal the defendants' exhibits only if I find "a compelling reason and articulate[] the factual basis for [my]

ruling, without relying on hypothesis or conjecture." *Id.* at 1096-97 (quotation omitted).  I must also balance "the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1097 (quotation omitted).  What constitutes a "compelling reason" lies within my discretion. *Id.*

The defendants have shown compelling reasons for sealing some of the exhibits attached to their response.  Nevada Revised Statutes § 432B.280 provides that, subject to certain exceptions, "information maintained by an agency which provides child welfare services, including, without limitation, reports and investigations made pursuant to this chapter, is confidential."  Section 432B.290(e) provides that a child welfare services agency may provide information to a court "for in camera inspection only, unless the court determines that public disclosure of the information is necessary for the determination of an issue before it."  I mention some facts from those records as necessary to explain my reasons for abstaining under *Younger* so the litigants and the public can understand my ruling.  But the public need not view the underlying records where Nevada law presumptively makes them confidential.  Those records discuss the welfare of an infant and some of the attached exhibits contain private medical information. *See Abbey v. Hawaii Emps. Mut. Ins. Co. (HEMIC)*, 760 F. Supp. 2d 1005, 1013 (D. Haw. 2010), *on reconsideration in part* (Feb. 7, 2011) ("The need to protect medical privacy qualifies as a compelling reason that overcomes the presumption of public access to judicial records." (simplified) (listing cases)).  Accordingly, I grant the defendants' motion to seal ECF Nos. 32-2 through 32-9 and 32-11 through 32-14.

However, the defendants have not shown compelling reasons to seal the index of exhibits (ECF No. 32), Wilde's declaration (ECF No. 32-1), or the entire Las Vegas Metropolitan Police Department police report (ECF No. 32-10).  I see no reason to seal the index or Wilde's

11

declaration, so I deny the defendants' motion as to those exhibits and order the clerk to unseal them.

The police report contains the minor child's name, medical information, information the police received from child protective services and DFS, and a description of what happened at a family court hearing, so those portions should remain sealed. ECF No. 32-10 at 3.  But the defendants have not explained why that information could not be redacted while the remainder of the report was made public.  The police report as presented to the court is already redacted in part to comply with Local Rule IC 6-1. *Id.* at 2 (removing personal identifiers like date of birth and addresses, but not redacting the minor child's name).  I will keep the police report sealed temporarily to give the defendants and the plaintiffs the opportunity to file a motion to seal that shows compelling reasons to keep any other portions of the police report sealed.  If no party files a motion to seal, I will direct the defendants to file a publicly accessible version that redacts the above identified information.

**II.  CONCLUSION**

I THEREFORE ORDER that the plaintiff Ryne Michael Seeto's motions for injunctive relief **(ECF Nos. 24, 25) are DENIED**.

I FURTHER ORDER that the defendants' motion to seal **(ECF No. 30) is GRANTED in part**.

I FURTHER ORDER the clerk of court to unseal ECF Nos. 32 and 32-1.  The other exhibits, ECF Nos. 32-2 through 32-14, will remain sealed.

I FURTHER ORDER that any party seeking to seal portions of the Las Vegas Metropolitan Police Department police report (ECF No. 32-10) that I have not already identified as approved for sealing must file a motion to seal by **January 9, 2026**.

I FURTHER ORDER that if no party files a motion to seal by January 9, 2026, then by January 16, 2025, the defendants must file a publicly accessible version of the police report that redacts the minor child's name, medical information, information the police received from child protective services and DFS, a description of what happened at a family court hearing, and any personal identifiers under Local Rule IC 6-1.

DATED this 19th day of December, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

13